1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10 | Daniel Lawrence Young,

11 |                 Petitioner,

12 |      v.

13 | State of Washington,

14 |                 Respondent.

CASE NO. C08-458-RSM

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS

15

16

**INTRODUCTION**

17       Petitioner Daniel Lawrence Young seeks 28 U.S.C. § 2254 habeas corpus relief from his

18 conviction for first-degree murder, and his 264-month sentence.  Mr. Young asserts that he was

19 denied his Sixth Amendment right to effective assistance of counsel when, for no strategic

20 reason, his attorney failed to subpoena Matthew Young, petitioner's son and acquitted co-

21 defendant.  To establish ineffective assistance, the petitioner must show that counsel's

22 performance was deficient, and that the deficiency prejudiced the outcome of the proceeding.

23 The Washington Court of Appeals denied Mr. Young's ineffective assistance claim because it

24 found that his attorney's performance was not deficient.  This Court may not conduct the two-

1   prong ineffective assistance analysis until it determines that the state court ruling was objectively

2   unreasonable.

3          For the reasons articulated below, this Court finds that the state court decision was

4   objectively unreasonable, that Mr. Young's counsel rendered deficient assistance, and that the

5   deficiency prejudiced the outcome of Mr. Young's trial.  Accordingly, this Court GRANTS Mr.

6   Young's petition for writ of habeas corpus, VACATES his conviction for first-degree murder,

7   and ORDERS that Mr. Young be released from custody unless the State of Washington

8   commences proceedings to retry him within ninety (90) days of this order.

9                                            **FACTS**

10          It is undisputed that Matthew Young shot Shawn Tuohy.  Yet Matthew[1] was acquitted of

11   first-degree murder, under a felony-murder theory with a predicate felony of robbery, while his

12   father, petitioner Mr. Young, was convicted of the same charge. *See* RCW § 9A.32.030 ("Murder

13   in the first degree").  Father and son were tried separately, and the critical difference between the

14   two trials was Matthew's testimony.  Matthew proceeded to trial first and testified in his own

15   defense that he shot Mr. Tuohy not in the course of a robbery but as part of a drug deal gone bad.

16   A felony-murder theory with a predicate felony of delivery of a controlled substance would

17   support only a second-degree murder charge, which the State did not bring against Matthew.  *See*

18   RCW § 9A.32.050 ("Murder in the second degree").  During Mr. Young's trial, defense counsel

19   failed to subpoena Matthew such that Mr. Young was left without the aid of Matthew's

20   testimony.  The charge of second-degree murder was consequently dismissed, since no evidence

21   supported it.  (Dkt. #28 [State Court Record, hereinafter "SCR"], Exh. 23, 7 Verbatim Report of

22   

23          [1] To avoid confusion, we refer to Matthew Young as "Matthew," and petitioner as "Mr.

24   Young."

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 2

1    Proceedings [hereinafter "VRP"] 772).  Thus, the three people involved in the crime received

2    convictions in inverse proportion to their involvement in Mr. Tuohy's death: (a) Matthew, who

3    admitted to shooting Mr. Tuohy, was acquitted; (b) Bryce Howe, who admitted to bludgeoning

4    and robbing Mr. Tuohy, pleaded guilty to second-degree murder without a deadly weapon

5    enhancement; and (c) Mr. Young, who was merely present during the incident, was convicted of

6    first-degree murder with a deadly weapon enhancement.

7         The Washington Court of Appeals summarized the facts as follows:

8         In July 2003, Daniel Young drove from Newport, Washington to a Denny's
restaurant in Snohomish County with his son Matthew Young and Matthew's

9         friend Bryce Howe. Sometime before 5 a.m., Daniel let Howe out of the car a
short distance from the restaurant, and then parked his car in the Denny's parking

10       lot. Shawn Tuohy drove into the parking lot and parked close to Daniel's car.
While Daniel, Matthew and Tuohy stood in the parking lot, Howe ran toward

11       them wearing a mask and wielding a wrench. Howe struck Tuohy, demanded
money, and the two scuffled until Tuohy gave Howe $25. As Howe ran away,

12       Tuohy retrieved a gun from his car and started shooting in Howe's direction.
Matthew, who also had a gun, shot at Tuohy, the bullet struck him in the head and

13       he fell. Daniel and Matthew got into Daniel's car and drove away. Following their
arrests, police found $1,060 in Matthew's possession.

14

15       After Tuohy died from the bullet wound, the State charged Daniel, Matthew, and
Howe with one count of first degree murder, a felony murder charge based on

16       first degree robbery, and one count of second degree murder, a felony murder
charge based on delivery of a controlled substance. The State charged a deadly

17       weapon enhancement for each count. The trial court dismissed the second degree
murder charge on the State's motion.

18       At trial, Howe testified that he entered into a plea agreement with the State to
plead guilty to second degree murder without a deadly weapon enhancement on

19       the condition that he testify against Matthew and Daniel. Howe testified that he
and Matthew were best friends, that they often used drugs together including

20       Oxycontin pills that they obtained from Daniel, and that Matthew asked him to
come to Western Washington to help with a robbery. Howe told the jury that

21       Matthew arranged to sell 100 Oxycontin pills for $1,100. Because Matthew did
not have the pills, he intended to rob the buyer. Howe claimed that he brought his

22       shotgun along to use in the robbery, but Daniel suggested he use a crescent
wrench rather than the gun. Howe testified that that the three men took various

23       drugs together and discussed the details of the robbery plan on the ride from
Newport to Snohomish County. Howe also testified that Matthew and Daniel both

24

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 3

1    spoke on the telephone at a rest stop near Denny's, presumably to get directions to
     the meeting place for the drug deal. Regarding the robbery itself, Howe testified
2    that Daniel did not actually participate.

3    State witnesses testified that Tuohy obtained a little over $1,300 from the
     Moneytree the day before the robbery. Daniel did not testify, but the State played
4    tapes for the jury and supplied transcripts of his interviews with police. Although
     Daniel originally claimed that he and Matthew were alone, Daniel eventually
5    admitted that he, Matthew and Howe drove from Newport to Snohomish County,
     and used various drugs on the way. Daniel told police that he was not aware of
6    any robbery plan, but that Matthew and Howe were bickering when Howe got out
     of the car near Denny's, and that he thought maybe Howe wanted to "get out and
7    walk a little bit and cool himself off." Daniel claimed that he did not know
     anything about a drug deal, that he did not know Tuohy, and that he pulled into
8    the Denny's parking lot to fix his muffler.

9    Matthew, who had been tried separately and acquitted, did not testify. At Daniel's
     trial, (defense counsel) informed the trial court that he had intended to call
10   Daniel's son, Matthew, as a witness. Several weeks before trial, (counsel) talked
     to Matthew's attorney and understood that Matthew would be available to testify
11   at Daniel's trial. However, just before trial, (defense counsel) learned Matthew did
     not intend to testify. Apparently (Matthew's attorney) advised Matthew that his
12   testimony would not help Daniel and could create problems for Matthew, despite
     his acquittal. (Defense counsel) stated that he believed that Matthew had been in
13   town two weeks before Daniel's trial, but that he had since left the state. (He) also
     stated that he relied on Mazzone's earlier statement that Matthew intended to
14   testify in Daniel's defense and did not attempt to serve Matthew with a subpoena.
     The State did not contest (defense counsel's) representations to the trial court and
15   the court did not make any findings of fact.

16   Anticipating an appeal based on ineffective assistance of counsel, the State
     offered a transcript of Matthew's trial testimony and a statement from a Pend
17   Oreille County Sheriff who attempted and failed to serve Matthew with the State's
     subpoena to demonstrate that "[I]f Matthew Young didn't want to be served, he
18   wasn't going to be served anyway." Matthew testified at his own trial that he had
     drugs to sell to Tuohy and that he threw the drugs into some bushes after the
19   shooting but before his arrest, Matthew said he had money with him on the trip
     from Newport because he had cashed his paycheck before leaving home.
20   According to Matthew, Howe proposed and planned the robbery and Daniel and
     Matthew refused to participate; that Daniel did not suggest using a wrench; they
21   dropped Howe at the freeway exit to avoid bringing a person unknown to Tuohy
     to the drug deal; and when they arrived at Denny's, Tuohy claimed he did not
22   have money and asked Matthew to wait until the next day for the money.

23   The jury found Daniel guilty of first degree murder while armed with a deadly
     weapon.

24

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 4

*State v. Young,* 2006 WL 1064122, at *1–2 (Wn. App. Apr. 24, 2006). The Washington Court of Appeals affirmed Mr. Young's conviction but vacated the firearm enhancement and remanded for resentencing. *Id.* at 6. The Washington State Supreme Court denied Mr. Young's petition for review. (SCR, Exh. 11). The mandate on Mr. Young's case was entered on February 16, 2007. (SCR, Exh. 12).

On February 12, 2008, Mr. Young, proceeding *pro se,* filed what was construed to be a personal restraint petition ("PRP"). (SCR, Exhs. 13, 14). In May, 2008, the Acting Chief Judge of the Washington Court of Appeals dismissed the PRP. (SCR, Exh. 15). In July 2009, the Washington Supreme Court Commissioner denied review of Mr. Young's *pro se* PRP. (SCR, Exh. 17). On September 19, 2009, the Chief Justice of the Washington Supreme Court denied Mr. Young's *pro se* motion to modify the Commissioner's ruling. (SCR, Exh. 19).

On March 21, 2008, Mr. Young petitioned for a writ of habeas corpus pursuant to 28 U.S.C. §2254. (Dkt. #1). The Federal Public Defender's Office was appointed as counsel (Dkt. #16), and filed an amended habeas petition in July 2008 (Dkt. #21). Soon thereafter, the Court granted Mr. Young's unopposed motion to stay the federal habeas proceedings until after the final resolution of his state PRP. (Dkt. #23). On October 30, 2009, the Court lifted the stay and directed respondent to answer Mr. Young's amended habeas petition. (Dkt. #25). Mr. Young replied in January 2010 and the petition is now ready for review. (Dkt. #29).

## DISCUSSION

### I.      Standard of Review and Ineffective Assistance of Counsel

A federal court may not grant a habeas petition "on behalf of a person in custody pursuant to the judgment of a State court" unless that judgment resulted from an "unreasonable application of clearly established Federal law ..." Antiterrorism and Effective Death Penalty Act,

1   Pub. L. No. 104-132, 110 Stat. 1214 (1996) (codified at 28 U.S.C. §2254[d][1][2006]).  Nor may

2   a federal court grant habeas relief merely because it disagrees with a state court's decision;

3   rather, it may only reverse a decision that is "objectively unreasonable." *Lockyer v. Andrade,* 538

4   U.S. 63, 75 (2003).  The "clearly established federal law" applicable to an ineffective assistance

5   claim comes from *Strickland v. Washington,* 466 U.S. 668 (1984).  Under *Strickland,* a criminal

6   defendant receives ineffective assistance if (A) that assistance is "deficient" and (B) the

7   deficiency "prejudices" the defense. 466 U.S. 668 at 687.  Where the state court does not reach

8   an element of the *Strickland* test, a federal habeas court will review the issue *de novo. Porter v.*

9   *McCollum,* 130 S.Ct. 447, 452 (2009).  The Washington Court of Appeals found that Mr. Young

10  failed to satisfy *Strickland's* deficiency prong, so the court did not reach the question of

11  prejudice.  Therefore, this Court reviews the state court's decision for an objectively

12  unreasonable application of *Strickland's* deficiency prong, and reviews the prejudice issue *de*

13  *novo.*

14          **A.  *Strickland's* Deficient Performance Prong**

15          Under *Strickland,* counsel's assistance is "deficient" if it "falls below an objective

16  standard of reasonableness … under prevailing professional norms." 466 U.S. 668 at 687–88.  In

17  elaborating the deficiency standard, the Supreme Court declined to provide any "specific

18  guidelines" or "particular requirements." *Id.* at 2065.  This lack of "particulars" aside, however,

19  *Strickland* clearly equates "reasonable" assistance with "strategic" assistance.[2]  The Court of

20  Appeals acknowledged that defense counsel's failure to subpoena Matthew was not "strategic,"

21

22
        _____

23          [2] *Strickland's* majority writes: "a court must indulge a strong presumption that counsel's
        conduct falls within the wide range of reasonable professional assistance; *that is,* the defendant
        must overcome the presumption that, under the circumstances, the challenged action 'might be
24      considered sound trial strategy.'" *Id.* at 689 (emphasis added).

1  but nonetheless determined that it was not deficient. The court's decision constitutes an

2  unreasonable application of *Strickland* because (1) it depended on irrelevant factual distinctions

3  between Mr. Young's case and one prior case; (2) it misconstrued *Strickland's* "reasonableness

4  under prevailing professional norms"; and (3) it misapprehends the policy concerns underlying

5  *Strickland's* prejudice prong.

6  **1.  The Court of Appeals Relied on Irrelevant Factual Distinctions Between Mr.**

7  **Young's Case and One Prior Case.**

8  The Report and Recommendation (R & R) finds that the Court of Appeals misapplied

9  *Strickland* when it distinguished counsel's "single lapse"—the failure to subpoena Matthew—

10  from the "pattern of incompetence" it deemed constitutionally deficient in *State v. Jury,* 19 Wn.

11  App. 256 (1978). (Dkt. #31-1 at 9).  According to the R & R, the state court incorrectly

12  determined that a single error was categorically insufficient to sustain an ineffective assistance

13  claim. *Id.*  In its Objection, the State counters that the Court of Appeals did not construe

14  *Strickland* to require a "pattern of incompetence," but "simply responded to Mr. Young's citation

15  to *Jury* by distinguishing *Jury's* facts from Mr. Young's case." (Dkt. #32 at 12).  This claim is

16  misleading.  In his state court appeal, Mr. Young cited *Jury* to support his contention that

17  "failure to subpoena witnesses may constitute deficient performance." *State v. Young,* 2006 WL

18  1064122 at *3.  Rather than address that contention, the Court of Appeals simply concluded that

19  Mr. Young's attorney's overall conduct was "not like" defense counsel's in *Jury. Id.*  The court

20  then relied on this distinction to summarily reject Mr. Young's argument that failure to subpoena

21  witnesses might be deficient under *Strickland.*

22  This summary rejection constituted an unreasonable application of *Strickland.* The

23  Supreme Court so held, with regard to *Strickland's* prejudice prong, in *Sears v. Upton,* 130 S.Ct.

24

1  3259 (2010) (state court erred when it declined to analyze prejudice because attorney had

2  presented "some" as opposed to no mitigation evidence at sentencing).  Moreover, the

3  Washington State Supreme Court has held that a single error may render an attorney's

4  performance constitutionally deficient.  *State v. Thomas,* 109 Wn.2d 222 (1987) (attorney's

5  failure to request jury instructions matching the defense's theory constituted ineffective

6  assistance).[3]  The Court of Appeals erred when it declined to analyze the alleged deficiency of

7  counsel's conduct, solely because this conduct was "not like the pattern of incompetence in

8  *Jury."* (Dkt. #32 at 12).

9     **2.   The Court of Appeals Misconstrued *Strickland's* "Reasonableness Under**

10        **Prevailing Professional Norms."**

11        As the Court of Appeals acknowledged, to show deficiency under *Strickland* a petitioner

12  must rebut a "strong … presum(ption) that defense counsel's conduct constituted sound trial

13  strategy," and must do so "in light of the entire record." *State v. Young,* 2006 WL 1064122, at *3

14  (citing *State v. Barragan,* 102 Wn. App. 754 (2000); *State v. McFarland,* 127 Wn.2d 322

15  (1995)).  There is no such presumption for Mr. Young to rebut, however, since his attorney

16  "stated on the record that his failure to serve a subpoena was not a strategy or tactic." *Young,*

17

18  _____

19  [3] Ninth Circuit precedent also supports Mr. Young's position. In *Alcala v. Woodford,* 334
    F.3d 862, 871 (9th Cir. 2003), the Ninth Circuit found an attorney's conduct deficient solely
    because he failed, for no strategic reason, to present either of two witnesses who could

20  conclusively verify the defendant's alibi. The attorney relied instead on the testimony of
    witnesses who could only vaguely recall corroborating circumstances. The *Alcala* court held that

21  "(w)hen defense counsel undertakes to establish an alibi, but does not present available evidence
    of the time or even the date of the alibi, or offer a strategic reason for failing to do so, his actions

22  are unreasonable." 334 F.3d at 871–72. Mr. Young's case is analogous to *Alcala.* Mr. Young's
    attorney undertook to establish a defense that depended entirely on Matthew's testimony, and

23  then failed, for no strategic reason, to present Matthew as a witness. The failure led him to forego
    corroborating witness testimony, and it ultimately forced him to abandon the theory around

24  which he had built Mr. Young's entire defense.

1    2006 WL 1064122, at *4. Rather than address the ramifications of this statement, however, the

2    court concluded that a "review of the entire record … demonstrate(d) that … (counsel) appeared

3    thoroughly familiar with the facts of the case and applicable law, vigorously and skillfully cross-

4    examined witnesses, made objections, proposed and obtained jury instructions, over the State's

5    objection, and fully and carefully argued (Mr. Young's) case to the jury." *Id.* at *3.

6        In effect, the court of appeals treated counsel's *general* professionalism as a defense

7    against allegations of *specific* deficiency, finding that the "entire record" showed him to be a

8    competent attorney. *Id.* at *3. This Court rejected similar reasoning in *Kwan Fai Mak,* 754

9    F.Supp. 1490, 1501 (W.D. Wash.), aff'd, 970 F.2d 614 (9th Cir. 1992) (otherwise

10   "conscientious" and "hard working" attorneys rendered ineffective assistance when they failed,

11   for no strategic reason, to gather mitigating evidence at sentencing).

12       The Court of Appeals conceded that defense counsel's failure to subpoena Matthew was

13   not "strategic," but agreed with counsel's assertion that one ought to be able to "rely on the son

14   testifying for his father." *Young,* 2006 WL 1064122, at *3.  On this basis the court concluded

15   that the failure to subpoena was "not necessarily unreasonable," and so did not constitute

16   deficient conduct under *Strickland. Id.*  Again, this Court rejected such reasoning in *Kwan Fai*

17   *Mak,* when it acknowledged the "understandable" reasons for defense counsel's failure to

18   mitigate, (i.e., lack of experience, language barriers, and time shortage), but still found that "the

19   failure … (constituted) a deprivation of the right to the effective assistance of counsel." 754

20   F.Supp. 1490, at 1501 aff'd, 970 F.2d 614.

21       The reasonableness of counsel's assumption that a son would voluntarily testify for his

22   father is irrelevant to Mr. Young's ineffective assistance claim.  Nowhere does *Strickland*

23   indicate that an attorney's performance will pass constitutional muster so long as it is somehow

24

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 9

1    "understandable."  Rather, it requires a reviewing court to investigate the "fundamental fairness

2    of the proceeding whose result is being challenged." 466 U.S. 668 at 696.  Under *Strickland,*

3    defense counsel's conduct may simultaneously reflect reasonable (personal) beliefs *and*

4    undermine the fundamental fairness of a criminal trial.  The state court presumed otherwise when

5    it denied Mr. Young's claim.

6        **3.  The Court of Appeals Misapprehended the Policy Concerns Underlying**

7            ***Strickland's* Deficiency Standard.**

8            In *Strickland,* the Supreme Court cautioned against creating a deficiency standard that

9    might have a chilling effect on defense attorneys: "Intensive scrutiny of counsel and rigid

10   requirements for acceptable assistance could dampen the ardor and impair the independence of

11   defense counsel, discourage the acceptance of assigned cases, and undermine the trust between

12   attorney and client." 466 U.S. 668 at 690.  In elaborating *Strickland's* deficiency prong, the

13   Court sought to preserve defense counsel's autonomy, since "even the best criminal defense

14   attorneys would not defend a particular client in the same way. *Id.* at 689.  By upholding a

15   defendant's right to counsel who will present critical witnesses, this Court will not jeopardize

16   that autonomy.  Absent a strategic justification, the failure to subpoena such witnesses reflects no

17   professional judgment, and thus merits no deference.  The trial record clearly indicates counsel's

18   skill and preparation, but as the Supreme Court wrote in *Strickland,* "(t)he object of an

19   ineffectiveness claim is not to grade counsel's performance." *Id.* at 697.  Thus, *Strickland* affords

20   no policy justification for rejecting Mr. Young's allegations of deficiency.

21       **B.  *Strickland's* Prejudice Prong**

22           This Court adopts the prejudice analysis in Judge Donohue's R & R in its entirety,

23   finding that counsel's deficient performance prejudiced the outcome of Mr. Young's trial. (Dkt.

24

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 10

1   #31-1 at 10–14). This Court agrees with the R & R that Matthew's testimony had the reasonable

2   probability of altering the outcome of Mr. Young's trial, and finds further support for this

3   conclusion in the analysis below.

4          As discussed above, the Supreme Court explained in *Strickland* that the "benchmark for

5   judging any claim of ineffectiveness must be whether counsel's conduct so undermined the

6   proper functioning of the adversarial process that the trial cannot be relied on as having produced

7   a just result." 466 U.S. 668 at 686.  Ultimately, the reviewing court should focus on the

8   "fundamental fairness" of the challenged proceeding. *Id.* at 670.  The second prong of the

9   *Strickland* test requires that a defendant affirmatively prove that counsel's "deficient

10  performance prejudiced the defense." *Id.* at 687.  More specifically, the "defendant must show

11  that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

12  proceeding would have been different.  A reasonable probability is a probability sufficient to

13  undermine confidence in the outcome." *Id.* at 694.  Reasonable probability is met where a jury

14  "would have a reasonable doubt respecting guilt," absent counsel's errors. *Id.* at 695.

15         Since the state court determined that Mr. Young's defense counsel was not deficient, it

16  did not reach the prejudice prong of *Strickland*.  Where the state court does not decide one

17  element of the *Strickland* test, that element is reviewed de novo. *Porter*, 130 S.Ct. at 452.

18         Ineffective assistance of counsel claims must be analyzed case-by-case, based on the

19  totality of the evidence. *Strickland*, 466 U.S. at 693.  While refusing to identify specific

20  prejudicial attorney behavior, the Supreme Court acknowledged that some attorney errors will

21  have only an "isolated, trivial effect," while others will have a "pervasive effect . . . altering the

22  entire evidentiary picture." *Id.* at 695–96.  Numerous lower courts have found prejudice in cases

23  where attorney error resulted in a significantly skewed "evidentiary picture," leaving the

24

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 11

1  defendant with no effective defense. *See Luna v. Cambra*, 306 F.3d 954, 961, 966 (9th Cir.

2  2002), *amended by Luna v. Cambra*, 311 F.3d 928 (9th Cir. 2002) (counsel's failure to interview

3  and subpoena alibi witnesses left defendant's alibi uncorroborated, prejudicing the outcome of

4  the trial); *Brown v. Meyers*, 137 F.3d 1154, 1157 (9th Cir. 1998) (missing alibi witness testimony

5  would have "altered significantly the evidentiary posture of the case . . . [and] the jury would

6  have had to balance more evenly divided evidence to reach its verdict"); *Sanders v. Ratelle*, 21

7  F.3d 1446, 1461 (9th Cir. 1994) (defense counsel's failure to investigate and present confession

8  of third party "must certainly undermine one's confidence in the murder conviction . . . [and]

9  served to deprive [the defendant] of the most critical evidence supporting his best defense"); *see*

10  *also Goodman v. Bertrand*, 467 F.3d 1022, 1024, 1030 (7th Cir. 2006) (testimony from a

11  disinterested eyewitness, who defense counsel failed to subpoena, was "undoubtedly important

12  to creating reasonable doubt in the state's case" against the defendant).  In sum, where counsel

13  error leaves a defendant without any real or effective defense, courts find prejudice, satisfying

14  the second prong of *Strickland*.

15        The state argues that the R & R failed to take into account the totality of evidence

16  presented in Mr. Young's trial, as required by *Strickland*. 466 U.S. at 669.  In particular, the state

17  points to witness testimony from Tuohy's girlfriend Amy Wyatt, who recalled meeting Mr.

18  Young on a previous drug deal.  The prosecution also introduced evidence of a map drawn in

19  dust on Mr. Young's car, apparently depicting the intersection near the Denny's where Tuohy

20  was shot.  The state is correct that the R & R did not discuss this evidence.  However, the

21  additional evidence only serves to implicate Mr. Young as an accomplice to a crime, not

22  specifically to a robbery.  Reasons other than planning a robbery could explain the map in the

23  dust. Furthermore, Ms. Wyatt's testimony actually corroborates the drug deal theory.  However,

24

1    since Matthew and Mr. Ruth did not testify, the second-degree felony murder charge based on

2    the drug-deal-gone-bad theory was dropped.  The jury was only instructed on first-degree murder

3    based on the robbery theory.  As a result, defense counsel was stuck trying to persuade the jury

4    that Mr. Young was not an accomplice to any crime, leaving Mr. Young without a credible or

5    effective defense.

6            The state also argues that Matthew's testimony would not have altered the outcome of

7    Mr. Young's trial, since the defense was badly constrained by Mr. Young's self-incriminating

8    confession.  However, as the R & R discusses, Matthew's testimony was sufficient to secure his

9    own acquittal of first-degree murder.  In addition, Mr. Ruth's corroboration would bolster

10   Matthew's testimony and significantly undermine Howe's version of events, leaving a

11   "reasonable probability" that the outcome of Mr. Young's trial would be different but for

12   counsel's error. *Strickland*, 466 U.S. at 694. *See also Goodman*, 467 F.3d at 1030 ("Where the

13   state's case consists chiefly or solely upon the word of an accomplice . . . courts have recognized

14   the great importance to the defendant of evidence of direct contradiction or material

15   corroboration from other sources."). The absence of Matthew's testimony deprived Mr. Young

16   of the "most critical evidence supporting his best defense," altering the "entire evidentiary

17   picture." *Sanders*, 21 F.3d at 1461; *Strickland*, 466 U.S. at 696.  This unbalanced evidentiary

18   picture "undermine[s] confidence in the outcome" of Mr. Young's trial. *Strickland*, 466 U.S. at

19   694.  The state insists that Young's confession, not Matthew's testimony, was the critical

20   difference between the two trials.  The critical difference was that Mr. Young was left without

21   any effective defense because counsel failed to subpoena the most important defense witness.

22           In his attached declaration, Matthew verifies that he would have appeared for Mr.

23   Young's trial had he been subpoenaed. (Dkt. #29-2 at 2).  The state contends that this declaration

24

1   is not credible because Matthew did not voluntarily appear for this father.  However, if

2   subpoenaed, Matthew would have been legally obligated to appear to testify, and could have

3   been held in contempt had he failed to appear.  This is substantially different from offering

4   testimony voluntarily. *See R & R* (Dkt. #31-1 at 12–13).

5          The state also asserts that Matthew may have invoked the Fifth Amendment and refused

6   to testify, "based on potentially being charged with perjury if he had made a material

7   misrepresentation during his prior testimony during his own trial." (Dkt. #32-1 at 2).  The state

8   cites no relevant authority to support this argument.  The Court finds this argument speculative

9   and unpersuasive, since Matthew warranted in his declaration that had he testified at Mr.

10  Young's trial, he would have provided the same facts regarding the incident as he did at his own

11  trial. (Dkt. #29-2 at 2).

12         Given the absence of critical defense testimony and the relative conviction of

13  accomplices, Mr. Young's "trial cannot be relied on as having produced a just result." *Strickland*.

14  466 U.S. at 668.  Had counsel subpoenaed Matthew, the jury would have been presented with a

15  more balanced evidentiary picture.  As a result, there is a reasonable probability that the jury

16  "would have reasonable doubt respecting" Mr. Young's involvement in a robbery. *Id.* at 695.

17  Defense counsel's deficient performance prejudiced the outcome of Mr. Young's trial, satisfying

18  the second prong of *Strickland*.  Mr. Young was denied his Sixth Amendment right to effective

19  assistance of counsel.

20                                              **CONCLUSION**

21         The jury lost the opportunity to consider that the victim died as part of a drug deal gone

22  bad, which would have supported a conviction for second-degree murder, rather than in the

23  course of a robbery, which supported Mr. Young's conviction for first-degree murder. Mr.

24

1   Young's attorney provided him ineffective assistance of counsel in violation of the Sixth

2   Amendment by failing to subpoena Matthew to testify.  The state-court adjudication to the

3   contrary constituted an objectively unreasonable application of Supreme Court authority.  As

4   such, this Court ADOPTS the Report and Recommendation of Magistrate Judge James P.

5   Donohue, GRANTS Mr. Young's petition for writ of habeas corpus, and VACATES his

6   conviction for first-degree murder.  Petitioner should be released from custody unless the State

7   of Washington commences proceedings to retry him within ninety (90) days after the entry of

8   this order. (Dkt. #31-1 at 14).

9           The Clerk of Court is directed to send a copy of this Order to Magistrate Judge James P.

10  Donohue.

11

12          Dated September 20, 2010.

13

14

                                    RICARDO S. MARTINEZ
15                                  UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24